Group. Is the appellant ready to proceed? I am, Your Honor. Thank you. Appellant, you ready to proceed? I am, Your Honor. Thank you. All right. Appellant, you may begin. May it please the Court, Nolan Knight here on behalf of the appellants, cross-appellees, whom I collectively will refer to as Construction, L.L.C. Barring any contrary preference from the Court, I am pleased to divide my presentation this morning into two principal components. I first will focus upon what we believe is the legal import that should be attributed to the jury's fact findings relative to what has been referred to as a null opinion defense. I additionally will take up the summary judgment dismissal of the Gordian appellee's trademark claim, which is the focus of their cross-appellate claim. With respect to the import of the jury's fact findings, we believe that the Court's error in this matter is twofold. As an initial matter in entering judgment in this matter, we do not believe that the Court comported with this Court's standard with respect to reconciliation of an ostensibly inconsistent jury finding. We additionally believe that the lower court erred here because it attributed to the Gordian appellees a First Amendment immunity, notwithstanding that the jury in this matter unanimously found that the Gordian appellees made a false statement, knew they made a false statement, or at minimum did so recklessly, which forecloses First Amendment protections. With respect to the reconciliation issue, we think this case in particular illuminates the principle virtue of the procedure contemplated on the Federal Rule of Simplicity 39, whereby a trial court charges a jury either through a special verdict form or a general verdict form with making fact findings irrespective of the legal implications of those findings. Instead, it is the task and the duty of the trial court, upon reflection of the jury findings in their totality, to discern the jury's actual intent and enter judgment accordingly. Mr. Knight, Mr. Knight, don't you agree that if one of the interrogatories finds a fact that resolves the case, the court can rely on that, even though there's some other interrogatories that don't implicate that finding, can rely on that one interrogatory? I think in the abstract that perhaps could be the case, Your Honor, but there are two considerations here that I think are pertinent. The anomalous fact finding in this matter is the jury's response to questions 12, which does not logically, probably, or we think, categorically align with the jury's responses to questions 1 through 8 and 14 on liability, the reward of damages on questions 15, 18, and 20, and the rejection of a legal justification defense through questions 9 through 11. But in addition to that, another problem with the way that question 12 was presented is that it cannot have the legal import that the Gordon appellate has suggested, and that the lower court perceived, in part because of the jury findings which categorically propose that legal import. I mentioned, for instance, the fact that the jury... Let me take your first statement. If a jury finds facts that would establish a prima facie case on liability, yet then finds that an affirmative defense is valid, why would the interrogatories that give you a prima facie case prevent the judge from doing that? If, in fact, the jury did make a finding on the affirmative defense, it perhaps would. Question 12, however, is not an articulation of an affirmative defense. Question 12 is an articulation of what is known as the sham exception to the Norrell-Panton affirmative defense. Here, the jury did not make any predicate factual findings, whereby they concluded that the Gordon appellate had demonstrated themselves to be the types of individuals engaged in the types of activities that would have qualified them for the Norrell-Panton affirmative defense. What the Gordon appellates instead have done has suggested that the sham exception actually substitutes for their burden as a party on the affirmative defense to prove themselves entitled to it. What I think is instructive in that regard is that question 12 is an articulation of a two-part sham exception criteria articulated by the Supreme Court in Professional Real Estate Investors v. Columbia, which is a 1993 opinion. And to put in context the underlying utility of the sham exception relative to what the jury found in every other respect, I think it's worth noting the Supreme Court's commentary from the 1971 opinion in California Motor Transport Company v. 20 Unlimited, where the court said, We said in Norrell that there may be instances where the alleged conspiracy is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor. So the point of the sham exception is to differentiate between earnest, principled, sincere attempts to invoke a governmental process, whether regulatory or the court's, with only the incidental secondary effects of harm, versus disingenuous, dishonest attempts to actually cause direct harm to a competitor. Well, if you look at the jury's findings, they are not logically or probably aligned with the notion that the Gordon appellees threw earnest indication of a process into the indirect harm. Instead, the jury repeatedly told us they perceived the record to reflect that the Gordon appellees threw false, dishonest efforts directly intended to cause harm to construction LLCs. Can I ask you one thing following up on Judge Davis's question about question number 12? You mentioned the professional real estate case from the Supreme Court, 1993 decision. Is it a fair statement of the holding of that case that an objectively reasonable effort to litigate cannot be a sham regardless of subjective intent? Is that a fair statement of what the Supreme Court held in that case? I think it is a fair statement, Your Honor, with one important qualification, if I may. Yeah, go ahead. Which is, as I read the case, it disclaimed that that standard applied to intentional falsehoods or reckless statements. Okay, so question 12 is getting at sort of that holding of the Supreme Court. I'm trying to understand the point of question 12. Question 12 is getting at that idea from the professional real estate case. Is that right? I think that's correct. It's trying to articulate the sham exemption. Right, and so the jury, as I understand, the jury unanimously said no, right? There was no, in other words, the litigation conduct wasn't objectively baseless. The district court said, yeah, it wasn't objectively baseless, unanimously, right? That is the interpretation that Gordon was giving to it. I don't think that there's a lot of probable reading because of a key omission from the question as it was framed. Okay. And the key omission, if I may, the key omission from the question as it was framed is that we, three times, in a proposed jury charge, at the charge conference, and then with permission of the court after the charge conference, took the position that the sham exception as articulated in that question would not be appropriate unless it was qualified by the fact that under no circumstances can a misrepresentation or, as the Supreme Court characterized it, an intentionally false or reckless statement qualify as the affirmative defense, which would in turn necessitate consideration of the sham exception to the affirmative defense. So the absence of the opportunity for the jury to convey under question 12 what they, by contrast, conclusively did under question 8, which was the state law business disparity claim, where they found that Gordon Pilles made a disparaging false statement. This is at record site 4920 to 4921, and the jury concluded that when Gordon Pilles made that false statement, they, quote, knew the falsity, acted with reckless disregard or ill will or intended to interfere. The import of that is that we have a unanimous finding from the jury that the Gordon Pilles did make a representation. And so the handicap, and it's why we cannot attribute the legal import that the Gordon Pilles have suggested to question 12, is because in the specific context of that question, although we requested the court did not include the qualifier, we think conclusively would have deterred the jury from even getting to the legally irrelevant point of whether or not the sham exception applies, because the jury would have had an opportunity, and consistent with their answer to question 8, to have recognized under no circumstances does a law-abiding doctrine even apply when you've managed to deliver. Well, I hear you're talking about question 8. My next question is questions 9 through 11 that have to do with the good faith belief that they had a valid basis to send cease and desist letters. That's questions 9 through 11? Correct. What are those questions addressed to? What legal point are those questions addressed to? Obviously, the jury found, I forget, it's not unanimous. It's 11 to 1. Basically, 11 said yes. Well, 11 said they lacked a good faith belief. One said they didn't lack a good faith belief. What are those questions addressed to? They are fundamentally addressed to the opportunity for the Gordon Pelley to have, in essence, excised themselves from what the jury had fundamentally found under counts 1 through 8 and 14, which is that the jury under, for instance, question 8, false statement, record was intentional. Under question 14, predatory specific intent to do harm. Under questions 1 through 3, specific intent to do harm. Questions 9 through 11 were an opportunity for the Gordon Pelley, who had the burden of proof, because those are legal justification advantages, to demonstrate that they actually had a good faith basis for doing so. That's my understanding. Whether they had a valid basis to send the cease and desist letters. Is that right? They're talking about their subjective beliefs? The Gordon Pelley has contended as much, Your Honor, but I'm not entirely comfortable with that notion, because the question was not structured to tell the jury to differentiate between subjective perspective on good faith versus the jury's perspective on good faith versus what any reasonable person would have thought in that regard. So I'm not entirely comfortable with that notion, because the question was not structured in a way for the jury to make that differentiation. Okay, thank you. Let me ask you one question about interrogatory number 12. Did you submit a substitute question for the judge to ask? We did, Your Honor. Is it in the record? It is. At record site 46 of 98 is where the party submitted their joint proposed jury instruction. And in that context, you can differentiate between the language that the Gordon Pelley proposed in blue and the language we proposed in red. And the import of our language is that we conveyed to the judge, if you are going to include the sham exception question, you have to qualify it with a misrepresentation predicate instruction to the jury. We made that same argument during the charge conference at record site 64 of 96, and with the court's permission, we submitted a proposed misrepresentation instruction after the charge conference, which is at record site 48 of 86. And the import of that is we now know what the jury would have done if that question had been included, because in question 8... Mr. Nolan, I just want to be clear. Are you saying there was an objection to question number 12 and that the judge overruled that objection? That's my understanding of the record, Your Honor. All right. And the import, again, is we know how the jury would resolve the issue if that qualification to the question is framed was included. Thank you, counsel. Mr. Cohen? Hello. My name is Jeff Cohen. I'm with the law firm of Flaster Greenberg. I represent the appellees and cross appellates of the Gordian Group, Inc. and Oris Means Company, LLC. It's an honor to be before you today, even if it's not in person. The jury in the trial court properly ruled that the North Paddington Doctrine acted as a complete bar to plaintiff's claims. Appellants remain unfocused, conjuring confusion where there is none. There's no question that the jury unanimously found for appellants in question 12 that the Gordian entity's pre-litigation action was immune because those actions were not objectively baseless. Plaintiff has the burden of proof, and the jury concluded that the plaintiff did not meet their burden of showing that no reasonable person could have realistically expected to succeed. The jury's findings, contrary to what the appellants say, were clear and not confusing. And as Judge Ellison himself put it, it was so clear that defendants were right on North Paddington that he would have entered judgment non obstante veredicta. The answer to interrogatory number 12 itself is proof that there was no confusion. It was two parts. The jury found the pre-litigation correspondence was not objectively baseless. The jury was asked to answer part two only if the activity was objectively baseless. The jury didn't ignore it. The jury actually put a slash through it. They crossed it out. And that was regarding whether appellees had subjective intent to interfere. They didn't just give it. There's also no inconsistency between 9 through 11 and 12 because there's no verdict for 9 through 11. Plus, those questions relate to a burden on Gordian to show good faith, which is a subjective standard. Most important, number 12 was an affirmative defense that disposed of the prior answers and was an objective standard. So you're saying that the defendants entitled to a North Paddington affirmative defense, if they objectively believe they have a good faith basis to write the letters, even though they're in bad faith and have made false statements? No. What I'm saying is that it is their burden. So the plaintiffs have the burden under North Paddington to show that there was no objective basis that a reasonable person could assume that they could prevail at trial. The plaintiffs, the appellants in this case, did not meet that burden. The appellants have brought something up. They used the phrase sincerity. I'm not quite sure where they're going with this, but the phrase sincerity is not something that's a jury. We do have a finding that they made false statements, don't we? Actually, no. So if you look at the actual question, they're talking about number eight. It's the business disparagement one. And it's 3.4 and it's page 29 of the instructions, which are over 90 pages long. And if you look, it says Gordian and Orris Means disparaged the business of the CCD group if they published a disparaging false statement about the business. And when they published the statement, they knew the falsity of statement or they acted with reckless disregard of whether the statement was false. So there is nothing in there that decides, the jury decides, whether or not the statement was false or was the other standard. That was up to plaintiffs if they wanted to include a different standard in there. We had an entire day of jury charge, an entire day. And with regard to, there was a question asked during their portion of the case about the jury charge. The jury charge, not only did we have an entire day, Judge Ellison gave them ample opportunity both before and after to do it. And they tried to put something in while they knew we were on a plane back to Houston on, I believe it was a Sunday night. And Judge Ellison made it clear, no more. It was enough. Because this case had been arduously tried. There had been difficulties throughout, including during opening arguments where there was almost a mistrial. This has continued to be a theme throughout this, that they continue to look for new ways to be confusing. But there is no confusion in this. If you don't have any questions, I'd like to just go back. It does seem odd to me that Norpinkin would apply, even though the one who writes the letter is in bad faith in writing the letter. First off, it's a different standard. It's a different standard, but it's a pretty clear standard if a party writes a letter knowing he doesn't have any basis for writing it. Well, what the jury did, first of all, the jury didn't have a finding with regard to 9-11. They had one for 8. But it does not say that it's false. So with regard to the bad faith, what you're talking about is 9-11. 9-11, there is no verdict. All right, but let me ask you this. Even though it was 11-1, can the court consider that in determining whether the jury may have been confused about a somewhat awkward question? Actually, the jury did not follow the judge's instructions. They were not supposed to give a number for the 11-1. I know that. But we have it. But the fact is, the judge was there. The judge was there for the entire trial. He saw that the plaintiffs did not meet their burden of showing that it was objectively baseless. This circuit only recognizes one exception, and that's the sham exception. And so that's what was done in this case. And this jury made it clear that there is no confusion. They were unanimous with regard to number 12. And to make sure there was no confusion, they specifically slashed off the second part of the question. So there could be no confusion that there is confusion. We can't consider the 11-1 answer to see if there was some confusion? No, because first of all, it's not a verdict. And second of all, it's a different standard. One is a standard that is subjective intent. And that was our burden to show. The standard for number 12 is objective. And the objective standard is that they believe that no reasonable person could assume that. If you look at the facts of this case and why the jury did that, this is what the jury heard just in summation. The construction task catalog takes over 20,000 man hours a year. Mr. Stack used and took the RS Means construction task catalog from his employer, who was a licensee of Gordian. Then somehow one man recreated something that took Gordian tens of thousands of hours and years to do. And he did it in less than three months. So what Gordian did is it had its staff review the data and found these striking similarities. That alone shows that it was not objectively baseless. But there was more. How can the plaintiffs claim that no reasonable person could conclude that there was no sham exception when third parties in the industry who testified and the plaintiffs themselves had reason to believe there was a problem? Mr. Stack used what he referred to as a crosswalk data tool to import his data. Mr. Stack testified that through client ads, there were blocks of data that he could not rule out were imported from RS Needs. That's what he said. Mr. Powell, Mr. Stack, and Mr. Brown exchanged emails that they were themselves concerned about all the identical lines of data between the two products. And then Mr. Stack himself stated in an email that he was concerned that their product was, and this is his words, poisoned with RS Means data. Did the jury also find though that the content of the two catalogs were not substantially similar? The jury did find that there were issues with regard to that, yes. But that does not mean that it was objectively baseless. It's a different standard. There was an objective basis to do it, and there was no sham exception, and the plaintiffs did not meet that burden. And importantly, if you go back and you look, the plaintiffs, or the appellants in this case, also were properly barred from suggesting that appellees committed fraud on the USPTO, and I wanted to go through that briefly. The plaintiffs had no way to prove fraud. They identified no witnesses. They identified no experts. They did not seek testimony from the examiners. Gordian had two federal trademark registrations. The ownership of a mark constitutes prima facie evidence that the mark is valid. Gordian sought this register on the mark and the principal register after five years of continuous use on the supplemental register. And plaintiffs wanted to argue that defendants had no valid basis to believe they had trademark rights, or they had a valid registration, had been using the mark since 1999, and their only basis was because a judge in 2018 merely said the mark was generic, which was the wrong standard. What was your evidence that there was fraud? I'm sorry? What was your evidence that there was not fraud? That there was not fraud? No. What fraud are you referring to? The fraud that you argued was permitted, committed. No, we're saying that there was no fraud. And what was your evidence for that? Our evidence that there was no fraud on the USPTO was the fact that they had two federal trademark registrations, that there was ownership of a mark that constituted prima facie evidence, that we registered the mark and had been using it. We had used it since 1999. And did you call anybody in the patent office to testify? It's not our burden. It is their burden to show fraud. And so they didn't raise the issue of fraud until they got to summary judgment. That was the first time that it came up. And at that point, they still had said that they were not going to have any witnesses, they were not going to have any experts, and they had not subpoenaed, nor did they try to get any of the examiners to determine it. And so if you're going to prove fraud, one of the things you have to do is you're going to have to show that you've somehow defrauded the examiner. They had no way to do that. Yeah, Mr. Cohn, let me just understand your position on fraud. I read a Seventh Circuit case, Mercatus Group, to say that evidence of fraudulent misrepresentation may be probative as to the sham exception under North Pennington. Do you think that's a correct statement of the law? Do we have a different rule in our circuit? That's a legal question. I understand that the argument you're making with respect to fraud evidence was that it was properly excluded by the court. But what about the legal question? Can evidence of fraud be relevant to a sham exception? I'm not sure if it can be to a sham exception. I'm sure evidence of fraud is relevant to some things. The problem here is that they had no way to show it. They weren't having any witnesses, they weren't having any experts, they weren't bringing in... I'm not talking about the strength of their evidence. I'm just talking about it as a general legal matter. Yeah, but at that point, Judge Ellison then has to make a call as to whether or not the probative value of that is going to be outweighed by the abuse. And that's exactly what Judge Ellison did, and Judge Ellison is permitted to make that call. He felt that there would be unfair prejudice and it would be misleading the jury because this was something that came up at the last minute. It was something that they couldn't cite any evidence that they were going to bring in. They weren't going to have a single witness that was going to be able to testify to this. And they chose, during a case that had been going on for several years, not to bring in the examiners at all, or even attempt to bring them in. Okay. Thank you. Lastly, I just want to go through our cross-appeal. The trial court erred in granting summary judgment on Gordian's trademark infringement claim because there was a genuine issue of material fact. The marking question was granted as descriptive and not generic twice by the USPTO. Gordian provided the USPTO with proof that it had become distinctive of the goods and services through continued use. It submitted proof that it had acquired secondary meaning, and that proof was two decades and thousands of contract solicitations. It earned eight-figure annual revenue from it. It had a seven-figure marketing and advertising budget. It was well-known within the construction industry, and they regularly used it in trade shows and conferences. Morton. The client has submitted some summary judgment evidence that the industry is saying that all these books are just considered construction catalogs. What did you put into it about that? Well, we never got to produce it at trial, if that's what you're asking. How about summary judgment evidence? With regard to summary judgment evidence, we produced evidence that showed that this was something that was unique to them. What we also did is we showed that this catalog was not just a catalog of construction tasks. What they're saying is what Judge Ellison did is he took the component parts of construction task catalog one word at a time and found that each of those words is generic. That's not the right standard. What he should have done is taken the compilation of words, the phrase, and determined whether or not that was generic, but it wasn't. The USPTO had determined that it was descriptive. It had developed secondary meaning, and the reason was is because the construction task catalog is more than just a list of tasks. In that, I mean that it provided labor information. It provided material information. It provided geographic locations because each construction project in a different location would have different data. One last point. The first time appellants made argument that the mere act of mistakenly writing principle rather than supplemental, which is something in their brief, constitutes fraud on the USPTO was in their summary judgment motion. Regardless, there was no fraud. It was a simple mistake and something the examiner on his or her own would have noticed. All right. Thank you, Counsel. Thank you. Roberto? I would like to start by clarifying one statement that Mr. Cohan made that I think is critical because it goes to Judge Davis' question regarding the unanimous jury finding on falsehood. The business disparagement instruction at section 3.4, page 29, is not a disjunctive articulation of falsehood or something else. The question reads, Gordian and or MS means disparage the business of a CCD group if they publish a disparaging false statement about the business and when they publish the statement they acted with reckless disregard, knowledge of a falsity, ill will, or intent. It is an absolute pre-predicate for that question that the jury unanimously found that Gordian and Pelley made a false statement. Now, the fact that we propose to Judge Ellison even more evidence with respect to the nature of the Gordian and Pelley's interaction with the Patent and Trademark Office or the Copyright Office, regarding the nature of their intention of falsehood, that that was excluded is inconvenient for us, but academic because of what the jury conclusively found with respect to question number eight. The reason that that clarification I think is dispositive, obviously for purposes of reconciliation issues which I focused on, but I'd also like to talk about the First Amendment limitation on immunity of any kind. When a person makes knowingly false or reckless statements, this court in Feminist Women's Health Center v. Mohammed, which is a 1978 case, I think correctly characterized the nature of a no opinion defense in a case of this kind by saying it is now clear that the doctrine is rooted in the First Amendment's guarantee of a right to petition. That is important because for more than 50 years, beginning with New York Times v. Sullivan and Garrison v. Louisiana, the United States Supreme Court has made clear that with respect to the absolute outside bounds of First Amendment protection, none survive the threshold at which a person is bound to make a false statement knowingly or recklessly. So it is not accurate to refer to this misrepresentation issue as if it is a quote unquote exception to normal opinion. The correct characterization is that because normal opinion in and of itself is a First Amendment doctrine, it cannot exist beyond the defined scope of First Amendment protection. And we know what that is because there is no form of First Amendment protection that extends due to the point of intention of falsehood or recklessness, which was conclusively found by this jury under Classing 8, and we respectfully submit if our misrepresentation instruction had been embedded in Question 12 as we three times requested, the jury would not have answered Question 12 as we did. And I'll note in that regard the commentary regarding the timing of certain submissions. At Record Cites 6496 to 6498, we specifically requested that Judge Ellison, after the jury charge conference, allow us to submit proposed language on the misrepresentation instruction, and Judge Ellison agreed. This was not a last-minute, late-night submission. It's precisely what the court requested, and we preserve the issue. With respect to the trademark issue, to some extent there's an academic quality to this because the board and appellees in their opening brief and reply brief have taken the position that they will not prosecute this claim further against us, even if the summary judgment is reversed. So I'll just very briefly note that we believe, as Judge Davis I think alluded to, the problem here is not what, in the abstract, the board and appellees believe that they could have propounded as far as summary judgment evidence on the genericness or non-genericness of their trademark. The problem is, on the summary judgment record, we submitted exhibits demonstrating that the phrase construction task catalog or construction cost catalog or unit price book are all six in one hand, half in the other, generic articulation of a book that contains information regarding construction tasks. They've never raised a genuine issue of material fact by propounding rebuttal evidence, so secondary meaning may be relevant. In closing, we think that the judgment should be rendered on questions 1 through 8, 14, 15, 18, and 20, and remanded for the issues of punitive damages, tribal damages, and attorneys' fees. Thank you. Thank you, counsel. Thanks to you both. The court will take this matter under advisement, and we are